Argued at Pendleton October 28, affirmed December 10, 1918, rehearing denied April 1, 1919.

## STATE *v.* CHING LEM.*

(176 Pac. 590.)

**Homicide—Evidence—Sufficiency.**

1. Circumstantial evidence, together with direct evidence of defendant's flight and concealment, *held* sufficient to establish that defendant was one of several conspirators who planned deceased's murder, and to sustain a verdict of murder in the second degree.

   [As to necessity that circumstantial evidence to convict of crime must exclude every reasonable hypothesis except guilt of the defendant, see note in Ann. Cas. 1913E, 428.]

**Criminal Law—Instructions—Evidence—Flight and Concealment.**

2. An instruction to consider evidence of defendant's flight and concealment immediately after the murder, as bearing on the question of guilt, *held* correct when construed with a later instruction that flight and concealment were not alone sufficient to establish guilt.

From Union: JOHN W. KNOWLES, Judge.

In Banc.

The defendant, Ching Lem, was indicted jointly with Chin Ping, Chin Borkey, Chong Bing, Louie Moon and Ah Sam by the grand jury of Union County for the crime of murder in the second degree, for the killing of William Eng on March 13, 1917. The indictment charges that the defendants "did then and there, conspiring and acting together, feloniously, purposely and maliciously kill one William Eng by then and there pursuant to such conspiracy shooting him, the said William Eng, with pistols loaded with powder and ball." The details of the shooting, the time, place and manner, and by whom Eng was killed, are fully set forth in the opinions of this court in the cases of *State* v. *Chin Ping, ante,* p. 593, and *State* v. *Chin Borkey,* recently decided, *ante,* p. 606. In this case there is no

*Authorities passing on the question as to whether flight creates a presumption of guilt are collated in a note in 39 L. R. A. (N. S.) 58.
                                                        REPORTER.

claim or pretense that the defendant actually fired either of the shots which caused Eng's death. It is claimed on behalf of the state that the murder was the result of a conspiracy and that the defendant was one of the conspirators. A separate trial was had and the defendant was found guilty of murder in the second decree. After judgment was entered this appeal was taken.

There are fifteen different assignments of error, the first of which is the refusal of the court to grant a change of venue, the twelfth is the admission into evidence of plaintiff's exhibit number E–5, and the fourteenth is that the trial court had no jurisdiction of the crime committed or of the defendant. All of such assignments are decided adversely to the defendant in the opinion of this court in the case of *State* v. *Chin Ping*. Other assignments are apparently waived, leaving the failure to direct the jury to return a verdict in favor of the defendant, the giving of instructions number 13 and 14 upon the question of flight and the refusal to give defendant's requested instruction number 8, and the sufficiency of the indictment as the remaining questions to be decided on this appeal.

For appellant there was a brief over the name of *Messrs. Cochran & Eberhard,* with an oral argument by *Mr. Colon R. Eberhard.*

For the State there was a brief over the names of *Mr. John S. Hodgin,* District Attorney, *Mr. George M. Brown,* Attorney General, and *Messrs. Crawford & Eakin,* with oral arguments by *Mr. Hodgin, Mr. Brown* and *Mr. Thomas H. Crawford.*

JOHNS, J.—The vital question in this case is whether or not there was sufficient evidence to sustain the verdict. It appears from the record that at about 12 M. on March 13, 1917, on one of the principal streets

of the City of La Grande, in front of the postoffice
building, William Eng was purposely and deliberately
killed by Chin Ping and Chin Borkey; that the murder
was the result of a conspiracy; that Chin Ping and
Chin Borkey went to the particular place from which
the shots were fired, for the express purpose of killing
Eng when he appeared on the scene, and that pursuant
to such conspiracy they did kill Eng. There is no
claim that this defendant committed any overt act or
that he actually fired either of the shots. It is strongly
contended by his counsel that there is not sufficient evi-
dence that the defendant conspired or acted with Chin
Ping and Chin Borkey in the murder of the deceased or
that the latter was killed as the result of a conspiracy
to which this defendant was a party.

The evidence shows that a 38-caliber bullet was ex-
tracted from the body of the deceased; that a 32-cali-
ber bullet was taken from the ankle of Mrs. George;
that those shots were fired by either Chin Ping or Chin
Borkey; that immediately after the shooting all of the
defendants ran away and disappeared within the Chin-
ese buildings adjoining Adams Avenue, where the
shooting took place; that such buildings were at once
surrounded by officers and numerous citizens called to
their assistance; that after a diligent search during the
whole afternoon, at about 5 P. M. of the same day Chin
Ping, Chin Borkey, Ah Sam, Chong Bing and this de-
fendant were discovered in a pit underneath a bed-
room in the rear of the Joss House, in which were also
found three fully loaded revolvers and another with all
but one of the shells fired; a mattress and some quilts.
There was a trap-door on hinges leading into this pit,
which was securely fastened from below, and entrance
to the pit could be made only through this door, which
was completely covered and concealed by a carpet upon

which had been placed a commode and a sewing-machine. There was no evidence in the bedroom of the existence of the trap-door or the pit under it. It appeared from the testimony that the tacks which had been in the carpet were recently removed; that the trap-door had been recently cut in the floor of the bedroom and that the pit underneath the door had been freshly dug.

Adams Avenue is fifty-six feet in width and the Joss House, the store of Quon Sing & Co. and the Chinese laundry adjoin and front on that street, diagonally across from the postoffice building. The map offered in evidence shows that the pit was in the northeast corner of the bedroom, which was connected with and in the rear of the Joss House, about one hundred and seventy-five feet from the drinking-fountain in front of the postoffice, where the deceased fell. The evidence shows that at and prior to the time of the shooting the defendant Chin Lem was standing on the sidewalk in front of the Quon Sing store, about one hundred and thirty-five feet from where Eng was killed; that immediately after the shooting he disappeared and was not seen again until he was discovered in the pit with four of his codefendants.

No witness testified that Ching Lem was seen with a revolver and there is no evidence which tends to show that either Chin Ping or Chin Borkey had more than one revolver, but there is much significance in the facts that the defendant and four other Chinamen, with four revolvers, were found in the pit; that three of those revolvers were fully loaded; that there was only one shell remaining in the other revolver and that another pistol, from which all of the shots had been recently fired, was found in a nearby shed; that after William

Eng fell mortally wounded Chin Ping returned and snapped his empty revolver at the head of the deceased. From such facts the jury could infer that Chin Ping had only one revolver and that each Chinaman found in the pit was the owner of one of the five pistols.

Jim Lee testified that at the time of the shooting he came from Hip Lee's store and saw two Chinamen standing in front of the Quon Sing store, and identified them as the defendant Ching Lem and Ah Sam, one of the codefendants; that Ching Lem took one or two steps forward and looked across to the postoffice towards Eng; that he, Jim Lee, had known Ching Lem for several years. Ralph Winters testified that about a minute after the shooting he saw four Chinamen "running across this yard from this wood-shed to building marked 'kitchen' "; that about a minute later he saw another Chinaman and they were all running. Chief of Police Rayburn testified that he heard the shots and with the assistance of fifteen or twenty citizens immediately surrounded the Chinese buildings so that no one could escape without being seen; that the pit above referred to was three feet deep, three feet wide and seven or eight feet long; that in one revolver there were one loaded cartridge and five empty shells; that it was a thirty-eight Colt's; that in the revolver found in the shed there were six empty shells; this revolver was a thirty-two-twenty; and the cut in the floor for the trap-door was fresh. John Newell testified that at the time of the shooting he saw three Chinamen in front of the Quon Sing store; that they all disappeared immediately after the shooting; that they seemed to be very much excited; that one was looking towards Eng and another was looking back towards the Chinese buildings, and that they all disappeared at the same

time.   B. A. Benham testified that it appeared that the
tacks were freshly removed from the carpet above the
trap-door and that the trap-door was recently cut.
J. A. Arbuckle testified that he was the owner of the
Model Restaurant; that William Eng had been in his
employ and came to work about 6 A. M. through the
rear of the restaurant and that the witness Mon Jet
was also in his employ on the same shift.   Mon Jet tes-
tified that at 6:45 A. M. three days before Eng was killed
he saw the defendant Ching Lem, Chin Borkey and Ah
Sam in the alley at the rear entrance of the Model Res-
taurant, where Eng would enter the building and where
he would be required to go in the discharge of his du-
ties.   J. C. Christiansen, a policeman, testified that he
worked on the night shift; that two days before, about
5:40 A. M. he saw Ching Lem and Chin Borkey together
in certain streets and alleys.   Ching Lem as a witness
in his own behalf testified on cross-examination that
the pit was open when he went in; that he knew Chin
Borkey; that together they got a cup of coffee on the
morning that they were seen by Christiansen.

From the facts that the tacks had been recently re-
moved from the carpet; that the trap-door had lately
been cut in the floor; that it was covered and concealed;
that the pit was freshly dug; that at the time of the
shooting the defendant was seen standing on the side-
walk in front of the store of Quon Sing & Co., in an
excited state; that immediately after the shooting he
disappeared among the Chinese buildings and was
later found in the pit, over which was a trap-door
bolted from underneath; that the pit was open and
ready when he went in; that it was only about forty-
five feet from where he was standing on the sidewalk;
that there were five Chinamen hidden and concealed to-
gether in the pit and five revolvers were found in and

near it, two of which had recently been fired; that the shooting was done by Chin Ping and Chin Borkey; that the defendant testified that he knew Chin Borkey, who actually did some of the shooting, are evidence of more than flight or concealment. The further facts that two days before the shooting the defendant was seen by the policeman with Chin Borkey, about 5:40 A. M., in the streets and alleys in the immediate vicinity of the place where the murder later occurred, and also the fact that the defendant was seen with Chin Borkey about 6:45 A. M. three days previous to the murder, lurking in the alley at the rear entrance of the Model Restaurant, where Eng would enter the building and where he would be required to go in the discharge of his duties, with the surrounding circumstances, are all evidence tending to show that there was a conspiracy to kill William Eng; that he was murdered as the result of such conspiracy and that the defendant was a party to it.

The court gave its instruction number 5 as follows:

"I instruct you that flight and concealment, immediately after the commission of a crime is a circumstance which you may take into consideration in determining the guilt or innocence of the defendant; and if you find from the evidence beyond a reasonable doubt, that immediately after the fatal shots were fired, which killed William Eng, the defendant fled and concealed himself in a pit under the floor of an outbuilding adjacent to the Chinese quarters, then I charge you that you are at liberty to consider this circumstance along with the other evidence, tending to connect the defendant with the commission of the crime,"

—and its instruction number 10, as follows:

"I instruct you that if you find from the evidence that the defendant fled and concealed himself, soon

after the death of the deceased, such flight or conceal-
ment, if any, is not of itself, sufficient evidence of de-
fendant's guilt, but only a circumstance to be taken
into consideration by the jury, with all the other cir-
cumstances in the case. You should consider along
with all the other evidence in the case, the pressure
brought to bear upon the defendant by the others, if
any, the fear or fright of defendant, if any, and all the
other circumstances of the case.''

It will thus be seen that the court specifically in-
structed the jury that flight or concealment alone was
''not of itself sufficient evidence of defendant's guilt,
but only a circumstance to be taken into consideration
by the jury, with all the other. circumstances in the
case.''

1, 2. The jury found the defendant guilty and under
the facts disclosed by the record we are of the opin-
ion that there was sufficient evidence to prove a con-
spiracy to kill William Eng, and that the defendant
was a party to the conspiracy.   While, as stated in the
opinions in the Chin Ping and Chin Borkey cases, the
court's instruction number 5 is not technically correct,
and defendant's requested instruction number 8, on the
subject of flight and concealment, was legally correct,
yet the court did give instruction number 10, above
quoted, and we are of the opinion that instructions 5
and 10 should be construed together and that when so
construed, any technical error in giving instruction
number 5 would be cured by the giving of instruction
number 10.   The defendant had the benefit of able
counsel who made a vigorous defense, and in its rul-
ings during the trial the court gave the defendant the
benefit of every doubt.   There were twenty-three in-
structions, in which the theory of the defense was
fully and fairly submitted to the jury.   Many circum-
stances were developed in the course of the trial ex-

clusive of the question of flight and concealment which tended to show that William Eng was killed as the result of a conspiracy and that the defendant was a party to the conspiracy. After careful consideration of the record we are satisfied that the defendant had a fair and impartial trial and that the judgment of conviction should be affirmed.

AFFIRMED.   REHEARING DENIED.

HARRIS, J., absent.