Argued at Pendleton October 14; reversed November 2, 1943

# STATE *v.* WILSON

(142 P. (2d) 680)

Before BAILEY, Chief Justice, and BELT, LUSK, BRAND and HAY, Associate Justices.

*H. H. DeArmond*, of Bend (DeArmond & Goodrich and W. F. Coshow, all of Bend, on the brief) for appellant.

*Rex Kimmell*, Assistant Attorney General (Leonard Waterman, District Attorney, of Burns, on the brief) for respondent.

BELT, J. The defendant, George Wilson, was convicted of manslaughter resulting from a drunken brawl and fist fight in the city of Burns, Harney county, Oregon. Based upon such judgment of conviction, the court sentenced the defendant to serve a term of fifteen years in the penitentiary. Hence this appeal.

The indictment is as follows:

"George Wilson is accused by the Grand Jury of the County of Harney by this Indictment of the

crime of Murder in the Second Degree committed as follows:

"The said George Wilson on the 2nd day of September A. D. 1942, in the said County of Harney and State of Oregon, then and there being, did then and there unlawfully and feloniously, purposely and of deliberate and premeditated malice, kill one George Milton Manley by striking the said George Milton Manley with his right hand and clenched fist on the head and body of the said George Milton Manley."

Objection, based upon the ground that the indictment does not charge either murder in the first degree or murder in the second degree, was made by defendant to the introduction of any testimony. More specifically, it is contended that murder in the first degree is not charged since that crime could not be committed by defendant's striking the head and body of Manley with his "right hand and clenched fist." Defendant asserts that murder in the second degree is not charged for the reason that deliberation and premeditation are not elements of such degree of homicide. Finally, he argues that, since neither degree of murder is charged in the indictment, it necessarily follows that the lesser degree of homicide, viz., manslaughter, is not included therein.

██ The indictment contains all the essential averments of a charge of murder in the first degree (§ 23-401, O. C. L. A.), although it is labeled by the grand jury as charging the defendant with the crime of murder in the second degree. We can not agree to the proposition that murder in the first degree can not be committed by beating another person to death with the fist. No case has been cited and there is none that we can find which supports such contention. It is quite true that death or great bodily harm is not the probable conse-

quence of a blow by the fist. Experience of mankind dictates to the contrary. A fist is ordinarily not considered a "dangerous weapon". It is not difficult, however, to conceive of a case wherein, on account of the disparity in age or strength, an assault by the use of the fist may be of such brutal nature as to indicate that the killing was done with deliberate and premeditated malice. Would it be contended that no charge of murder in the first degree could be sustained if the proof showed that a person brutally beat a helpless child with his fist in such manner as to cause death?

The rule applicable is thus stated in 26 Am. Jur. 361, § 306:

"Since death is not the natural or probable result of a blow with the fist, it seems that no intent to kill will, under ordinary circumstances, be presumed, inferred, or implied, although death resulted from such an act, notwithstanding the accused may have been much taller or heavier than the deceased. Of course, an assault with the fist may be attended with such circumstances of violence and brutality that an intent to kill may be presumed. The fists may become most deadly, by blows often repeated, long continued, and applied to vital and delicate parts of the body of a defenseless, unresisting person."

*People v. Crenshaw*, 298 Ill. 412, 131 N.E. 576, 15 A.L.R. 671; *People v. Munn*, 65 Cal. 211, 3 P. 650; *McAndrews v. People*, 71 Colo. 542, 208 P. 486, 24 A.L.R. 655; *People v. Hunter*, 265 Ill. 618, 7 N.E. (2d) 444; *State v. Cobo*, 90 Utah 89, 60 P. (2d) 952—cited by appellant—hold that, under the facts involved therein, no malice could reasonably be inferred by the jury and hence a charge of murder could not be sustained. The above cases are not authority for the proposition that

an indictment charging murder is insufficient where it is alleged that death was caused by blows of the fist. In *People v. Crenshaw*, supra, the court held that, under the particular facts of that case, no inference of intent to kill was warranted in the striking of a person on the head with the fist although death resulted and, therefore, the charge of murder could not be sustained. The court was careful to say, however, that:

> "There might be a case in which the disparity in size and strength of the parties might be so great that a blow delivered with a bare fist might reasonably be expected to result in dangerous or fatal consequences * * * * *."

In *People v. Munn*, supra, it was said:

> "If the means employed be not dangerous to life, or, in other words if the blows causing death are inflicted with the fist, *and there are no aggravating circumstances,* the law will not raise the implication of malice aforethought, which must exist to make the crime murder." (Italics ours.)

In *McAndrews v. People*, supra, the court recognized the exception to the general rule when it said:

> "That there may be cases in which malice may be implied where the homicide was committed by means not ordinarily likely to produce death, has already been indicated."

In *State v. Cobo*, supra, the court, in considering the evidence, said:

> "The defendant did not beat the deceased in a vicious, deadly, or barbaric manner. Had he done so, though using nothing but his fists, a different result might be reached."

It was there held that only the charge of involuntary manslaughter could be sustained by the evidence.

In *Commonwealth v. Lisowski,* 274 Pa. 222, 117 A. 794, the defendant continuously assaulted his wife for a period of forty minutes with his hands and feet, resulting in her death. Defendant was convicted of the crime of murder in the first degree and the judgment on appeal was upheld.

■ Having concluded that the indictment charges murder in the first degree, although not labeled as such, it follows that the lesser degrees of homicide are included therein. No discussion of the indictment in reference to the charge of murder in the second degree is deemed necessary for the simple reason that defendant was convicted only of manslaughter. Neither is it necessary, for the same reason, to say whether the evidence in the instant case would sustain a conviction of murder in the second degree.

Other assignments of error require a brief statement of the facts out of which this case arose. The defendant is a logger about 42 years of age and weighs 160 pounds. He lived with his wife at a logging camp about 38 miles distant from the scene of the alleged crime. Defendant went to Burns on the day in question to see his doctor about an injury to his ankle. He was on crutches and his leg, from the ankle to the knee, was in a cast. During the afternoon, defendant drank beer and played poker. About midnight, he went to Mae Crownover's "place" in the city where, for the first time, he met George Manley. Manley and the defendant, together with Mae Crownover and a girl named "Neda" excessively indulged in intoxicating liquor, continuing the "party" until the wee hours of the morning. Betty Fields, another woman who also worked at this place, came home about midnight and went to bed about 4:15 in the morning. Defendant and Manley became involved in a heated argument about

buying liquor and there was much foul language used. Defendant retired from the kitchen and went into the front room where he sat down on a couch. Manley came into this room and the brawl continued. Bill Bond was very drunk and asleep in a chair in the same room. He testified that he was awakened by the noise and heard the defendant say that he would "kill the God damn son of a bitch" (referring to Manley), and that he saw defendant using one crutch and carrying the other follow Manley out of the front door onto the porch. There is evidence that defendant struck Manley as they went through the door. The fight continued on the porch until both of them rolled off to the ground below. Bond did not go out to see the fight. He was asleep when it ended. Defendant says that, while fighting at the foot of the concrete steps, he twice knocked Manley down. When Manley did not get up, defendant went into the house and told Mae Crownover to "call the doctor. I hit that man pretty hard." Defendant then got into his car and drove home but, according to Betty Fields, before doing so he told "Mae", "I am going out to camp. If they want me, you know where I can be found." Defendant thereupon drove home and went to bed.

Manley, a man 49 years of age and weighing 175 pounds, died as the result of a basal skull fracture, soon after Dr. W. G. Homan arrived. Dr. Homan testified that the bridge of deceased's nose was badly broken and there was a deep cut behind his right ear several inches long, and expressed the opinion that either of such injuries was the cause of the basal skull fracture.

■ No witness saw the fight, which occurred at about five o'clock in the morning, and no witness testified as to what caused the injuries above mentioned.

Neither Mae Crownover nor the girl "Neda" was called as a witness. Hence the record is quite meagre concerning the facts and circumstances surrounding this fistic encounter. Were deceased's injuries caused by a blow of the clenched fist? Did deceased, after being struck, fall and strike his head on the concrete steps or upon the rocks at the foot of the steps? Was deceased struck by one of defendant's crutches? These questions naturally occur to any inquisitive mind. The indictment, however, charged that Manley died as a result of defendant's striking him with his "right hand and clenched fist" and the evidence must, as a matter of law, be considered in the light of such restricted pleading.

At about 10 o'clock in the morning of the day the fight occurred, two police officers went to the logging camp where defendant lived and found him asleep. After being awakened, defendant, in response to their questions, told the police officers about the fight. Defendant was then arrested and taken into custody.

■ It is asserted that the court erred in permitting the witness Sgt. Glenn C. Martin of the state police to testify as to statements made by defendant immediately prior to his arrest without having been informed that Martin was an officer and that Manley was dead. The record discloses that, immediately after asking the defendant his name, Martin stated that he was a police officer. True, defendant was not told about the death of Manley, but we think the officers were not obliged to supply this information. We are not dealing with a confession but an alleged admission against interest. There is a distinction between confessions and admissions: *State v. Howard,* 102 Or. 431, 203 P. 311; *State v. Fisher,* 132 Or. 693, 288 P. 215. No error was committed by the court in permitting the witness Martin

to relate what the defendant is alleged to have said to him about what occurred, even though it included an alleged statement that the defendant "didn't know whether he had hit him (Manley) with the crutches or not." The court, however, in its instructions, might well have cautioned the jury that defendant was not charged with having killed Manley by striking him with his crutches.

Error is predicated on the giving of the following instruction relative to the alleged flight of the defendant:

"There is some evidence introduced by the State tending to show the flight of the accused. Upon the question of the flight of the defendant, if you believe from the evidence, beyond a reasonable doubt, that the defendant did flee from the scene of the alleged killing at that time or immediately thereafter, I charge you that the flight of a person immediately after a crime is a circumstance which you may consider in determining the guilt or innocence of the defendant in connection with all the facts brought out in the testimony, and in fact it is your duty to determine under the facts of the case as given on the witness stand, whether or not there was a flight."

■■ Evidence of flight is introduced for the purpose of showing a consciousness of guilt: Wharton's Criminal Evidence (11th Ed.) p. 400, § 300. Any testimony tending to prove that a person suspected of having committed a crime fled or endeavored to escape arrest is admissible: *State v. Meyers,* 59 Or. 537, 117 P. 818; *State v. Ching Lem,* 91 Or. 611, 176 P. 590. However, in the instant case, we think there was no evidence upon which to base an instruction of flight and it was prejudicial to the rights of the defendant to so instruct. Defendant, according to the undisputed evidence, told

Mae Crownover that he was going home and "if they want me, you know where I can be found." He went where he said he was going and was found by the police at such place. No reasonable inference of flight can be drawn from such evidence.

■ Assignment of error No. 8 is based upon the giving of certain instructions relative to the different degrees of homicide. Since the retrial must be limited to the charge of manslaughter *(State v. Steeves,* 289 Or. 85, 43 P. 8947) it is apprehended that such instructions will not again be given and, therefore, there is no need further to comment concerning them.

■ Assignment of error No. 9 is based upon the following instruction:

> "I instruct you that cursing or swearing at or calling one a 'son of a bitch' is not a sufficient act on the part of the deceased, showing a purpose to do bodily harm to the defendant."

The above instruction might well be misleading in view of the claim of self defense. Of course, the mere fact in itself that decedent called defendant such a foul name would not justify an assault by the latter but it might, under the circumstances, indicate an intention on the part of the deceased to harm the defendant. Such instruction should be omitted on retrial.

■ In our opinion the evidence justified the court in submitting the case to the jury. Whether such evidence would sustain a conviction of murder in the second degree presents another question unnecessary to decide. Defendant was not entitled to a directed verdict of acquittal.

Finding no other assignment of error which we think merits discussion, it follows that the judgment is reversed and the cause remanded for a new trial.