THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* TULIO LÓPEZ LAFONT, Defendant and Appellant.

No. 15373. Argued May 5, 1953.—Decided December 15, 1954.

574

575

*Charles H. Juliá* and *Ismael Soldevila* for appellant. *José Trías Monge, Attorney General,* and *Rafael L. Ydrach Yordán, Assistant Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE SIFRE delivered the opinion of the Court.

Appellant was charged in the former District Court of Puerto Rico, San Juan Section, with involuntary man-

slaughter committed, as recited in the information, by running over and killing Pablo Figueroa Sierra with an automobile driven recklessly and negligently by him.[1] The jury found him guilty and he was sentenced to serve six months in jail and to pay a fine. He appealed and prays that the judgment be reversed on the ground that the court committed several errors.

▌ In the first assignment he challenges the verdict as contrary to the evidence. We disagree with that contention. It is alleged that the evidence offered by The People was conflicting as to the speed at which the vehicle was being driven, the manner in which the accident occurred, and whether the accident was caused by appellant or by the driver of another vehicle.

It is absolutely true that there was conflict between those particulars in the evidence introduced by The People, and also, to a considerable degree between such evidence and that offered by appellant for the purpose of proving that he was not involved in the accident, and that he was exempt from all responsibility. However, it is incumbent on the jury to adjust conflicts in the evidence, *People* v. *Cabrera*, 59 P.R.R. 133; *People* v. *Betancourt*, 66 P.R.R. 127; *People* v. *Rodríguez*, 70 P.R.R. 21, as it undoubtedly did in rendering the verdict which, in our opinion, is supported by the evidence.

Sufficient evidence was introduced tending to prove that on October 20, 1951, at 6:45 p.m., appellant was driving his automobile upon highway No. 1 leading from Río Piedras to Caguas, having four concrete lanes divided by a grass strip in the center, two of which are used to go towards Río Piedras

---

[1] Section 203 of the Penal Code reads as follows:

"Manslaughter Defined. Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

"1. Voluntary. Voluntary—upon a sudden quarrel or heat of passion.

"2. Involuntary. Involuntary—in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection."

and two towards Caguas; that the vehicle was driven at an excessive speed, as a result of which it ran off the road and suddenly landed on the grassy area to the right of the road, in the direction of Río Piedras, on which grass Pablo Figueroa Sierra and another youngster were walking; that he ran over and killed the former at that place, hurling him into the air by the impact and running along the ditch next to the grass for approximately 30 meters, with the body pinned in the front of the car for part of that distance; that appellant then went back on the road, crossed the two lanes leading to Río Piedras as well as the grass strip in the center, and passed on to the lanes leading to Caguas, taking the opposite direction from that in which he was originally travelling, again crossed the center grass and went back upon one of the lanes leading to Río Piedras, proceeding at high speed without stopping at the scene of the accident.

The second assignment challenges the verdict as contrary to law. Appellant's contention is that, for an information charging involuntary manslaughter to be successful, "the evidence must necessarily establish that there was negligence or carelessness on the part of defendant in such a degree as to be tantamount to wanton negligence," and that this be the proximate cause of the death. He maintains that it was not established in the case at bar that the accident was due to negligence of that type, since "the only charge against defendant is that he drove at excessive speed," which "only constitutes prima facie evidence" of negligence.

We have expressed the view in some of our decisions that in order to obtain a conviction for involuntary manslaughter, The People is bound to prove that death was due to criminal negligence, citing with approval precedents of other courts in which such negligence is defined as gross or wanton. See *People* v. *Rodríguez*, 47 P.R.R. 565. We reiterate that the People is bound to prove that there was evidence of a criminal

nature, since § 11 of the Penal Code provides that, "In every crime or public offense there must exist a union or joint operation of act and intent or criminal negligence," [2] but we have reached the conclusion that it is not necessary to resort to those terms in order to define it, where the court submits to the jury's consideration the kind of involuntary manslaughter in which death is caused, as happened in this case, *"in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection."* This is so because in the provisions of § 203 of the Penal Code which we have italicized we find the definition of that specified kind and of the negligence required for conviction, it being therefore improper and unnecessary to define it as gross or wanton, introducing in the definition of the offense concepts other than those adopted by the legislature. *People* v. *Seiber*, 207 Pac. 396 (Cal.) ; *People* v. *Anderson*, 208 Pac. 324 (Col.) ; *People* v. *Wilson*, 226 Pac. 5 (Cal.) ; *People* v. *Crossan*, 261 Pac. 531 (Cal.) ; *State* v. *Brooks*, 288 Pac. 894 (Idaho) ; *People* v. *Marconi*, 5 P.2d 974 (Cal.) ; *People* v. *Pociask*, 96 P. 2d 788 (Cal.) ; *State* v. *Salhus*, 189 P. 2d 372 (Idaho) ; *People* v. *Freudenberg*, 263 P. 2d 875 (Cal.). The special characteristic of this kind of manslaughter is that the act *might produce death*, viz., *that it has knowable and apparent potentialities to produce it.* Where a legal act of those potentialities is unlawfully performed, or without taking the precautions which, in view of the hazardous character of the act, are expected of a person of ordinary prudence, and as a consequence thereof death ensues, the wrongdoer commits involuntary manslaughter.

In support of his contention, appellant cites decisions of this Court construing the provisions of § 328 of the Penal Code. However, a re-examination of those provisions leads us to conclude that they do not apply to the case at bar,

---

[2] The intent to kill is not an element of involuntary manslaughter.

which is governed by the provisions of § 203 of that Code, as here construed, and not by those of the said section.[3]

The contention that the only charge against appellant was driving at excessive speed, "which only constitutes prima facie evidence of negligence," is without merit. He was charged with operating the vehicle "with such negligence or carelessness, at an excessive speed, upon the highway leading from Caguas to Río Piedras, without regard to the conditions of the road or traffic, allowing the vehicle to roar off the road in such a way that it ran over Pablo Figueroa Sierra, a human being," and sufficient evidence was submitted to and believed by the jury to conclude that The People had established the offense. In saying that excessive speed is merely prima facie evidence of negligence, the meaning is that the defendant may offer evidence to warrant or account for it, and to overcome the prima facie case if possible, *People* v. *Piñeiro, ante,* p. 502; *State* v. *Ligman,* 91 P.2d 457 (Utah), but it does not mean in any way that excessive speed can not by itself warrant a verdict of conviction if it is shown that it was illegal or negligent to drive the vehicle at such speed, and that due to that speed manslaughter resulted. Otherwise, the absurd and dangerous doctrine would prevail that automobile drivers have full discretion to drive at any desired speed, even if by so doing they might and actually do produce death.

The third assignment charges that the trial court allowed a witness for The People to testify that he visited the scene of the accident a few days thereafter in order to meas-

---

[3] Section 328 of the Penal Code provides that:

"Section 328.— (*As amended by Act No. 51 approved on April 13, 1916, p. 105.*) Every conductor, engineer, brakeman, switchman or other person having charge wholly or in part of any railroad car, locomotive, automobile, train or steamboat, and any train dispatcher, telegraph operator, station agent, or other person wholly or in part charged with the duty of dispatching or directing the movements of any such car, locomotive, automobile, train or steamboat, who, through gross negligence or carelessness, suffers or causes the same to collide with another car, locomotive, automobile, train or steamboat, or with any other object or thing whereby

ure the width of the marks made on the road by the tires of appellant's automobile, in a test made in the latter's presence, for the purpose of comparing them with the marks left at the place where Pablo Figueroa Sierra was killed, the result being that they were of the same width. The defense objected to the testimony of the witness on those particulars on the ground that it was not shown that he was an expert, wherefore "it was not proper to make experiments of this kind with defendant's automobile," and because such experiments had to be made by an expert "under the same circumstances, with respect to the time and speed." Appellant presents that same argument before this Court, alleging further that the admission of the evidence objected to "is tantamount to the admission of evidence of facts which merely purport to compel the defendant to incriminate himself," but this ground of objection was not raised in the trial court. The latter did not commit the error assigned. The witness made no experiments, and expressed no opinion in stating that he had measured the traces made on the road, and giving the result. He merely testified to a fact and his testimony was admissible to be weighed by the jury, together with the other evidence introduced by The People, for the purpose of identifying the vehicle which caused the death. The contention—made without citing any supporting precedent—that the admission of such testimony is tantamount to compelling the defendant to incriminate himself, is untenable, aside from the fact that the question was not raised in the court below.

■■ The fourth assignment alleges that said court erred "in refusing to give special instructions on the alleged flight of defendant-appellant." In view of the fact that the in-

the death of a human being is produced, is punishable by imprisonment in the penitentiary for a maximum term of five years.

"If as a consequence of the collision, injury is suffered by any person, such conductor, engineer, brakeman, switchman or other person shall be punishable by imprisonment in jail for a maximum term of two years, or by a maximum fine of one thousand dollars, or by both penalties in the discretion of the court."

formation alleged that he fled immediately after causing the accident, the defense moved that the jury be instructed that "in a case of this nature, flight in itself does not constitute negligence, and cannot therefore be considered by the gentlemen of the jury as conclusive of defendant's guilt." That was the instruction which the court refused to give, and it is contended that it was error to so refuse, which error was aggravated, according to appellant, in instructing the jury that, "In this case there was admitted in evidence a sworn statement given by the defendant on November 2 and another on November 5, two statements bearing different dates subsequent to October 20, 1951, tending to prove that defendant made false and contradictory statements to cover up his connection with the facts in which he was allegedly involved. Although those statements are not by themselves sufficient to establish defendant's guilt, they may, however, be considered by the jury as circumstances tending to prove a sense of guilt, and you should give them the probatory value which they deserve in your judgment depending on the importance which you may attach to such statements, for those are things for the jury alone to determine."

The instruction proposed by appellant was unnecessary, since the trial court had properly instructed the jury on the probatory value of the evidence presented by The People on appellant's flight or escape, charging that if they believed that the latter "did not have an accident which resulted in the death of another person and, if he did, that he was not aware of it," it was their duty "not to take into account the fact that the defendant did not stop at the scene of the accident....," but "if you believe that it has been established that...while driving his car he had an accident which caused the death ... of Pablo Figueroa Sierra, and that he failed to show that he was not aware of it and that he fled immediately," you should then consider the following instruction: "The flight of a person immediately after the commission of a crime or after having been charged with the commission

thereof, is not by itself sufficient to establish his guilt, and it is a fact that, once it is established, may be considered together with all other circumstances in deciding whether or not the defendant is guilty. It is for the jury alone to decide whether the flight...is an incriminatory circumstance because it tends to reveal that he has deep within him a sense of guilt," adding that "it was for the jury to weigh the relative value of that circumstance."

The prevailing doctrine is that the actions of the accused after the commission of an offense, such as flight or escape, concealment of evidence, deceitful or false declarations, are circumstances to be considered as tending, in some degree, to prove a consciousness of guilt, the significance or insignificance of which, as well as the weight to which they are entitled, is to be determined by the jury together with other circumstances. II Wigmore on *Evidence*, p. 111, 3d ed.; I Wharton's *Criminal Evidence*, pp. 400, 401, 402, 403, 11th ed.; *People* v. *Jones*, 63 Cal. 168; *People* v. *Giancoli*, 74 Cal. 642; *People* v. *Fine*, 77 Cal. 147; *People* v. *Ross*, 115 Cal. 233; *People* v. *Fannelly*, 128 Cal. 83; *People* v. *Easton*, 148 Cal. 50; *State* v. *Pettit*, 137 Pac. 335 (Wash.); *Commonwealth* v. *MacMahon*, 22 Atl. 971 (Pa.); *State* v. *Chin Lem*, 176 Pac. 590 (Ore.).

There is nothing objectionable in the instruction given by the trial court in connection with the declarations of the accused after the accident. Abbot's *Criminal Trial Practice*, p. 943; II Wigmore on *Evidence*, *supra*, I Wharton's *Criminal Evidence*, *supra*.

 Appellant maintains in the fifth, sixth, seventh, eighth, ninth, tenth, and eleventh assignments that the trial court erred in refusing to give certain special instructions requested by him.

In the first instruction, referred to in the fifth assignment, he requested that the jury be charged that "The decisions of the courts disagree as to the degree of negligence

required for a conviction of involuntary manslaughter; but they all agree that a greater degree of negligence is required than that necessary to establish the right of a person to secure compensation for damages in a civil action." We are told that this instruction is literally copied from our opinion in *People* v. *Rodríguez*, 47 P.R.R. 565. In discussing in that case the assignment that the verdict was erroneous as contrary to evidence and insufficient at law to establish the accused's guilt, we merely stated the principle embodied in that instruction but we did not decide that it was imperative to give it as such to the jury. Such an instruction may create confusion, *People* v. *Pagán*, 49 P.R.R. 423,[4] and would not be sufficient to define the criminal negligence which the People must prove in an action such as that brought against appellant, since to say that such negligence had to be of a greater degree that that required to obtain compensation in civil actions, is merely to suggest comparisons without offering the basis for comparison and without establishing any rule to acquaint the jury with that element of the offense. *People* v. *Marconi, supra.* Moreover, it was stated in said instruction 1 *a* that the decisions vary as to the degree of negligence required to find a person guilty of involuntary manslaughter, which statement, although in keeping with our holding in *People* v. *Rodríguez*, 47 P.R.R. 565, for the sole purpose of admitting that the judicial decisions are at variance, is worthless as an instruction.

In view of the foregoing reasons and because the

---

[4] In *People* v. *Rodríguez*, 70 P.R.R. 21, an action for violation of § 328 of the Penal Code, we stated that the court was not careful enough "to explain to the jury that it was not a question of ordinary negligence or carelessness, but that it was necessary for said negligence or carelessness to be equivalent to gross negligence," which is correct under the provisions of that section. We also stated in that case that the trial court was not careful enough to explain to the jury that the gross negligence "had to be of a greater degree than that required to obtain compensations in civil actions," and we wish to make it clear that a statement to the latter effect is unnecessary to define the negligence which The People must prove in an action prosecuted under said § 328.

word "carelesness" is not used in § 203 of the Penal Code, it is obvious that the trial court acted correctly in refusing to give the following instruction 1*b*, embraced in the sixth assignment: "The Code does not, by the use of the term carelessness, wish to signify mere lack of care, but a degree of negligence or carelessness greater than that required to obtain compensation in a civil action."

Appellant urged that the jury be given special instruction 1*c* referred to in the seventh assignment to the effect that "in involuntary manslaughter the negligence must be criminal, but in order that negligence be criminal it must be gross or wanton. Gross negligence is that which touches the limits of imprudence, and wanton negligence, such as is applicable to the operation of a motor vehicle, implies a positive abandonment of the rules bearing on diligence and a phlegmatic disregard of its consequences." He also urged the giving of the following instruction 1*d*, embraced in the eighth assignment: "Criminal responsibility cannot be based on every lawful act carelessly performed, merely because such carelessness produces the death of a person. In order that negligence be held criminal, it must be shameless or wanton and it must demonstrate an utter disregard of the safety of others under circumstances which are likely to cause them damage."

Appellant contends that the trial court erred in refusing to give the aforesaid instructions, particularly in view of the fact that in the general instructions the jury was not instructed "on gross negligence or carelessness, which are tantamount to wanton negligence, nor . . . in the sense that such gross negligence or carelessness should be the proximate cause of the accident." For the reasons set forth in the discussion of the second assignment, it is obvious that that court did not commit the error complained of and that it was under no duty to charge the jury "on gross negligence or careless-ness, which are tantamount to wanton negligence," nor that

the death of Pablo Figueroa Sierra must have been caused through carelessness or negligence of such character.

The special instruction that "criminal responsibility cannot be based on every lawful act carelessly performed, merely because such carelessness produces the death of a person," was unnecessary since the trial court had instructed the jury that: "The mere occurrence of an unfortunate and fatal accident in which the accused is involved, does not by itself constitute proof or inference that the accused acted without due caution or circumspection. In ascertaining whether a person acted with due caution and circumspection, the jury is bound to weigh all the attendant circumstances of the criminal act in question, without reaching a conclusion on the sole fact of the consequences of the accident." In view of that instruction, there was no reason for giving the one requested by appellant. *People* v. *Torres*, 52 P.R.R. 484; *People* v. *Santana*, 53 P.R.R. 11; *People* v. *Sánchez*, 55 P.R.R. 342; *People* v. *Lebrón*, 56 P.R.R. 563.

Since the trial court refused to give special instructions 1c and 1d requested by the defense, those given *sua sponte* on the elements of the offense object of the action have been carefully examined in order to determine whether any error was committed which would warrant reversal of the judgment.

After instructing the jury on the definition of the offense of involuntary manslaughter imputed to appellant, the court gave, among others, the following instructions: "The act of involuntarily causing the death of a human being by performing in an unlawful manner the lawful act of driving an automobile without due caution or circumspection, constitutes the offense of involuntary manslaughter... What we seek to punish in a criminal act of this nature is the recklessness, the lack of care, the lack of circumspection, that is, the accused's negligence. And if the evidence shows beyond a reasonable doubt that the degree of such reckless-

ness, lack of circumspection, or negligence was such as to be considered the true or main cause of the damage—the death of a human being in the instant case—the prosecuting attorney will have proved the commission of an offense, and he is not bound to prove that the victim did not contribute with his negligence to the commission of the damage.... One who performs an act without due care or circumspection may be said to be...negligent, careless, unmindful of his duties, and that the damage was caused through that carelessness, recklessness and negligence.... The nonobservance, for the due protection of the interests of another person, of that degree of care, protection, or vigilance fairly required under the circumstances, as a result of which another person sustains some damage, constitutes carelessness or negligence. As stated hereinbefore, the gentlemen of the jury are bound to decide whether or not the accused exercised due care and circumspection when he committed the acts complained of... In the decision of that question, you should bear in mind that the concept 'care and circumspection' is not absolute but relative, and varies according to the circumstances in each case. That means that the degree of care and circumspection required in a case is dependent upon several factors, such as the nature of the act performed, the class of instrument or artifact used by the accused, the circumstances which the person who performed it should have reasonably had in mind at that moment."

The court below gave instructions on the speed limit on highways of a rural zone, stating in part that: "The speed of a motor vehicle must be regulated with due care, and with due regard to the width, amount of traffic, use, and condition of the road. No one should drive at a greater speed than that which will permit him to duly control the vehicle and to reduce the speed or stop whenever necessary.... As already stated, motor-vehicle drivers in Puerto Rico are not limited to a speed limit along the highways of

the rural zone.... The law establishes a variable speed limit, viz., a different limit for each particular situation, and the operator is not permitted to drive at a greater speed than that warranted by the circumstances in each case. If a driver is careless and negligent in gauging those circumstances and drives at an excessive speed which does not permit him to duly control his vehicle and to reduce the speed or stop in time to avoid injury to a person on the road, he is then violating the speed law upon the highways of Puerto Rico." [5]

The instructions, coupled with the definition of involuntary manslaughter, were sufficient to advise the jury that the lack of due caution or circumspection, referred to by the lower court and punishable under the law, relates to an act which is hazardous to the human safety and not to any one act.

[5] Section 15 of Act No. 279 of 1946 (Sess. Laws, p. 598)—Automobile Act—as amended by Act No. 156 of April 26, 1951 (Sess. Laws, p. 368), reads as follows:

"Section 15.—(a) The speed of a motor vehicle shall at all times be regulated with due care, and with due regard to the width, amount of traffic, use, and condition of the highway. No person shall drive at a speed higher than that which may permit him to exercise due control of the vehicle and to reduce the speed, or to stop when necessary in order to avoid knocking down a person or to collide with any other vehicle or transportation device on the road or entering same, in compliance with the requirements of law and with the duty of exercising the due care to which drivers and other persons using the road are subject.

"(b) It shall be unlawful to operate a motor vehicle at a speed of more than twenty-five (25) miles an hour in the urban zone; or at a speed of more than fifteen (15) miles an hour in rounding a curve where the view is not clear at a distance of one hundred (100) meters towards the front; or in crossing an intersection at a speed of more than fifteen (15) miles an hour when the driver of the vehicle cannot clearly see the vehicles approaching or which may approach said intersection within a limit of fifty (50) meters in all directions, save in such intersections where traffic is regulated by traffic lights, in which case the driver having the right to continue may do so at the speed fixed for the urban zone; or at a speed of more than fifteen (15) miles an hour when passing a district where public schools are located. The Commissioner of the Interior is hereby authorized to establish zones and fix speed limits therefor within the limits fixed in this Act: and when doing so he shall fix signs and notices indicating the maximum speed."

We are fully convinced that those instructions were not prejudicial to appellant's rights and that, taken as a whole, they were sufficient to advise the jury on the elements of the offense which The People was bound to prove, to enable it to deliberate and reach a verdict conscious of what it was doing.[6]

■■■ The ninth assignment charges that the lower court should have given special instruction 1e, requested by the defense, which reads: "The speed limit permitted by law in Puerto Rico is the following: 25 miles an hour in the urban district; or at a speed of more than 15 miles an hour in rounding a curve or intersection, where the view is not clear at a distance of 100 meters towards the front, or when passing a district where public schools are located; or at a speed of more than 45 miles an hour in all other cases."

The instruction in question was based, in part, on the provisions of § 15(b) of Act No. 279 of April 5, 1946 (Automobile Act), as amended by Act No. 156 of April 26, 1951 (see footnote 5), in accordance with which the jury was instructed. Even if the provisions relied on had been in force, the trial court would not have erred in refusing to give it, since such instruction by itself could have led to the belief, clearly erroneous, that if the speed limit for automobiles is fixed by statute, the implication is that they may be driven at any speed within the limit, even if death ensues.

■■■ It is contended in the tenth assignment that the trial court erred in refusing to give the following special instruction 1f: "If the gentlemen of the jury believe that the accused did not produce the death, or, if he did, that he was not guilty of criminal negligence, viz., gross, careless,

---

[6] The comments on the second assignment will facilitate the task of instructing the jury in cases of involuntary manslaughter under the second provision of that offense. The first provision is not involved, according to which involuntary manslaughter is the killing "in the commission of an unlawful act, not amounting to felony," inasmuch as the jury was not instructed on that provision.

or wanton negligence, he should be acquitted of the offense charged." That error was not committed. The first part of that instruction was fully covered by the court in the general instructions given, and the second part, defining criminal negligence, was improper for the reasons already discussed.

██ Because it was also unnecessary, in view of the instructions given *sua sponte*, we are of the opinion that the court acted correctly in refusing to give special instruction 1*g* embraced in the eleventh assignment, to the effect that: "If the gentlemen of the jury have reasonable doubt as to whether or not the accused produced the death, or if they have reasonable doubt as to whether or not the accused was guilty of criminal negligence, they should give him the benefit of that doubt and acquit him."

By the twelfth, thirteenth, fourteenth and fifteenth assignments appellant challenges several instructions, some of which have been discussed, on the ground that they prove that the trial court "was moved by passion, prejudice, and bias." There is no justification for making such a serious imputation.

In view of the foregoing reasons, appellant is not in the right in maintaining in the sixteenth assignment that the court below erred "in denying the reconsideration sought in order to give the jury the special instructions requested by the defense."

The judgment appealed from will be affirmed.