## Alfred Wellar v. The People.

*Criminal cases: Bill of exceptions: Evidence.* While it is not desirable to introduce all the testimony into a bill of exceptions in a criminal case, it is important to indicate in some way the whole chain of facts which the evidence tends to prove, so that the relations of all the rulings may be fully appreciated.

*Manslaughter: Murder: Intended injury.* The distinction between manslaughter and murder is a vital one, resting chiefly on the greater disregard of human life shown in the higher crime; and in determining whether an unintentional killing is murder or manslaughter the nature and extent of the injury or wrong actually intended must usually be of controlling importance.

*Murder: Intent.* To constitute murder the intent need not be to take the life of the person killed, or even to inflict a personal injury upon him, but it must be equivalent in legal character to a criminal purpose aimed against life; and generally there must be an intent to commit either a specific felony, or at least an act involving all the wickedness of a felony; and if the intent be directly to produce a bodily injury, it must be such an injury as may be expected to involve serious consequences, either periling life or leading to great bodily harm.

*Murder: Intent: Deadly weapon: Presumption.* In general where the assault is not committed with a deadly weapon the intent must be clearly felonious to make the killing constitute murder; and though the presumption arising from the character of the instrument of violence is not conclusive, yet where such weapons are used as do not usually kill, the deadly intent ought to be left in no doubt.

*Murder: Manslaughter: Intent: Charge to the jury.* In this case, where the injury, if inflicted by the defendant, was inflicted either by a blow from the fist or a kick, and where the evidence was not such that the jury could not properly have found a verdict of manslaughter if the question had been left to them, it is held that a charge which instructed them that if the defendant committed the homicide it would be murder, and not manslaughter, unless it was committed under such extreme provocation as is recognized in the authorities as sufficient to reduce intentional and voluntary homicide committed with a deadly weapon to that degree of crime, was erroneous.

*Homicide: Evidence: Previous relations of prisoner and deceased.* The previous relations of the prisoner and the deceased may be shown on a trial for homicide; they may be of more or less importance in explaining conduct and motives.

*Homicide: Physical strength: Evidence.* The physical strength of the respective parties may be shown also, but not by evidence of specific acts, especially where inferences might be drawn unfavorable to the prisoner's character which would not be relevant to the charge; these inquiries should be general and not leading, and should not, where it can be avoided, introduce irrelevant matter.

*Homicide: Eye witnesses: Duty of prosecution as to calling witnesses.* In cases of homicide, and in other cases where analogous reasons exist, those witnesses who were present at the transaction, or who can give direct evidence on any material branch of it, should always be called by the prosecution, unless, possibly, when too numerous; and the fact that the witness may not be favorable to the prosecution is no excuse for not calling him, though it may authorize the prosecuting attorney when necessary to press him with searching questions.

WELLAR *v.* PEOPLE.

*Duties of prosecuting attorney.* A public prosecutor is not a plaintiff's attorney, but a sworn minister of justice, as much bound to protect the innocent as to pursue the guilty, and he has no right to suppress testimony.

*Witnesses: Indorsing name on information.* The fact that the name of a witness is indorsed on the information as one of the people's witnesses does not of itself involve any necessary obligation to do any more than have the witness in court ready to be examined.

*Heard April 22.    Decided July 21.*

Error to Saginaw Circuit.

*William H. Sweet* and *William A. Clark*, for plaintiff in error.

*Isaac Marston, Attorney General,* for the People.

CAMPBELL, J.

Plaintiff in error was convicted of the murder of Margaret Campbell by personal violence committed on July 25, 1873. They had lived together for several months, and on the occasion of her death she had been out on an errand of her own in the neighborhood, and on coming back into the house entered the front door of the bar-room, and fell, or was knocked down upon the floor. While on the floor there was evidence tending to show that Wellar ordered her to get up, and kicked her, and that he drew her from the bar-room through the dining-room into a bedroom, where he left her, and where she afterwards died. The injury of which she died was inflicted on her left temple, and the evidence does not seem to have been clear how she received it or at what specific time. It was claimed by the prosecution to have been inflicted by a blow when she first came in, and if not, then by a blow or kick afterwards. All of the testimony is not returned, and the principal questions arise out of rulings which depend on the assumption that the jury might find that her death was caused by some violent act of Wellar's; which they must have done to convict him. There can be no question but that, if she so came to her death, he was guilty of either murder or manslaughter. The complaint made against the

30 MICH.—3.

charge is that a theory was put to the jury on which they were instructed to find as murder what would, or at least might be manslaughter.

There was no proof tending to show the use of any weapon, and, if we may judge from the charge, the prosecution claimed the fatal injury came from a blow of Wellar's fist, given as she entered the house. The judge seems to have regarded it as shown by a preponderance of proof, that the injury was visible when she was in the bar-room, and that the principal dispute was as to how it was caused, whether by a blow, or kick, or by accident. It also appears that, if inflicted in that room, it did not produce insensibility at the time if inflicted before the prisoner dragged her into the bedroom. It does not appear from the case at what hour she died.

It may be proper to remark that while it is not desirable to introduce all the testimony into a bill of exceptions in a criminal case, it is important to indicate in some way the whole chain of facts which the evidence tends to prove. Without this we cannot fully appreciate the relations of many of the rulings, or know what instructions may be necessary to be sent down to the court below. The bill before us is full upon some things, but leaves out some things which it would have been better to include.

Upon any of the theories presented, there is no difficulty in seeing that if Wellar killed the deceased, and if he distinctly intended to kill her, his crime was murder. It is not claimed on his behalf that there was any proof which could reduce the act to manslaughter if there was a specific design to take life. Upon this the charge was full and pointed, and is not complained of. There was no claim that he had been provoked in such a way or to such an extent as to mitigate intentional slaying to any thing below one of the degrees of murder.

But it is claimed that, although the injury given was fatal, yet, if not intended to produce any such results, it was of such a character that the jury might, and properly

should, have considered it as resting on different grounds from those which determine responsibility for acts done with deadly weapons used in a way likely to produce dangerous consequences. But the charge of the court did not permit them to take that view.

It will be found by careful inspection of the charge, that the court specifically instructed the jury, that if Wellar committed the homicide at all, it would be murder, and not manslaughter, unless it was committed under such extreme provocation as is recognized in the authorities as sufficient to reduce intentional and voluntary homicide committed with a deadly weapon to that degree of crime. And in this connection the charge further given that if the intent of the respondent was to commit bodily harm, he was responsible for the result, because he acted willfully and maliciously in doing the injury necessarily led to a conviction of murder, because there was no pretense of any provocation of that kind.

Manslaughter is a very serious felony, and may be punished severely. The discretionary punishment for murder in the second degree comes considerably short of the maximum punishment for manslaughter. But the distinction is a vital one, resting chiefly on the greater disregard of human life shown in the higher crime. And in determining whether a person who has killed another without meaning to kill him is guilty of murder or manslaughter, the nature and extent of the injury or wrong which was actually intended, must usually be of controlling importance.

It is not necessary in all cases that one held for murder must have intended to take the life of the person he slays by his wrongful act. It is not always necessary that he must have intended a personal injury to such person. But it is necessary that the intent with which he acted shall be equivalent in legal character to a criminal purpose aimed against life. Generally the intent must have been to commit either a specific felony, or at least an act involving all the wickedness of a felony. And if the intent be

directly to produce a bodily injury, it must be such an injury as may be expected to involve serious consequences, either perilling life or leading to great bodily harm. There is no rule recognized as authority which will allow a conviction of murder where a fatal result was not intended, unless the injury intended was one of a very serious character which might naturally and commonly involve loss of life or grievous mischief. Every assault involves bodily harm. But any doctrine which would hold every assailant as a murderer where death follows his act, would be barbarous and unreasonable.

The language used in most of the statutes on felonious assaults, is, an intent to do "grievous bodily harm."—*Carr. Sup., p. 237.* And even such an assault, though "unlawfully and maliciously" made, is recognized as one where, if death followed, the result would not necessarily have been murder.—*Ibid.* Our own statutes have made no provision for rendering assaults felonious, unless committed with a dangerous weapon, or with an intent to commit some felony.—*Comp. L., ch. 244.*

In general, it has been held that where the assault is not committed with a deadly weapon, the intent must be clearly felonious, or the death will subject only to the charge of manslaughter. The presumption arising from the character of the instrument of violence, is not conclusive in either way, but where such weapons are used as do not usually kill, the deadly intent ought to be left in no doubt. There are cases on record where death by beating and kicking has been held to warrant a verdict of murder, the murderous intent being found. But where there was no such intent the ruling has been otherwise. In *State v. McNab, 20 N. H., 160,* it is held that unless the unlawful act of violence intended was felonious, the offense was manslaughter. The same doctrine is laid down in *State v. Smith, 32 Maine, 369.* That is the statutory rule in New York and in some other states.

The willful use of a deadly weapon, without excuse or

provocation, in such a manner as to imperil life, is almost universally recognized as showing a felonious intent.—See *2 Bish. Cr. L.*, §§ *680, 681*. But where the weapon or implement used is not one likely to kill or to maim, the killing is held to be manslaughter, unless there is an actual intect which shows a felonious purpose.—See *Turner's case, 1 Raym., 144,* where a servant was hit on the head with a clog; *State v. Jarrott, 1 Ired., 76,* where the blow was with a hickory stick; *Holly v. State, 10 Humph., 141,* where a boy threw a stone; *Rex v. Kelly, 1 Moody, C. C., 113,* where it was uncertain whether a person was killed by a blow with the fist, which threw him on a brick, or by a blow from a brick, and the court held it a clear case of manslaughter. In *Darry v. People, 10 N. Y., 120,* the distinctions are mentioned and relied upon, and in the opinion of *Parker J.* there are some remarks very applicable. In the case of *Com. v. Webster, 5 Cush. R., 295,* the rulings of which have been regarded as going beyond law in severity, this question is dealt with in accordance with the same views, and quotations are given from *East* to the same purport.

The case of death in a prize fight is one of the commonest illustrations of manslaughter, where there is a deliberate arrangement to fight, and where great violence is always to be expected from the strength of the parties and the purpose of fighting till one or the other is unable to continue the contest. A duel with deadly weapons renders every killing murder; but a fight without weapons, or with weapons not deadly, leads only to manslaughter, unless death is intended.—*1 East, P. C., 270 ; Murphy's case, 6 C. & P., 103 ; Hargrave's case, 5 C. & P., 170.*

The case of *Commonwealth v. Fox, 7 Gray, 585,* is one resembling the present in several respects, in which the offense was held to be manslaughter.

The jury were sufficiently and rightly charged upon the extent of the respondent's liability for any intended killing. And if respondent willfully and violently kicked the deceased

in such a way as he must have known would endanger her life, and her life was destroyed in that way, an actual intention of killing would not be necessary, as in such case the death would have been a result he might fairly be held to regard as likely. But it was certainly open to him to claim that, whatever may have been the cause of death, he did nothing which was designed to produce any serious or fatal mischief, and that the injury from which the deceased came to her death was not intentionally aimed at a vital spot, or one where the consequences would be probably or manifestly dangerous. We have no right to say that there was no room for a verdict of manslaughter, and the effect of the charge was to deny this.

Most of the other questions are of such a nature that, if arising on another a trial, they will be presented in a more guarded form. We have no doubt it is proper to show the previous relations of Wellar and the deceased, and that they may be of more or less importance in explaining conduct and motives. We are also inclined to think it would not be incompetent to show the physical strength of the respective parties. It is objectionable, however, to prove these things by evidence of specific acts, especially where inferences might be drawn unfavorable to the prisoner's character, which would not be relevant to the charge. These inquiries should be general, and not leading, and should not, where it can be avoided, introduce irrelevant matter.

We also think it was not correct practice to compel the defense, instead of the prosecution, to call the witness Malladay. It appeared that he was one of two persons present at the occurrence for which Wellar was on trial, and it further appeared that his name was endorsed on the information as one of the people's witnesses, so that he was not unknown to the prosecution. It devolves on the prosecutor in a case of homicide, to connect the prisoner with the injury which is claimed to have been the cause of death, and to give all the testimony in his power going to the proof of the *corpus delicti.* The fact that the name of a

witness is endorsed on the information, does not of itself involve any necessary obligation to do any more than have the witness in court ready to be examined.—*Rex v. Simmonds, 1 C. & P., 84; Rex v. Beezley, 4 C. & P., 220; Reg. v. Bull, 9 C. & P., 22; Reg. v. Bodle, 6 C. & P., 186; Reg. v. Vincent, 9 C. & P., 91; Rex v. Harris, 7 C. P., 581.* But in cases of homicide, and in others where analogous reasons exist, those witnesses who were present at the transaction, or who can give direct evidence on any material branch of it, should always be called, unless, possibly, where too numerous. If there is any other admissible reason, none has yet been passed upon, and none has been presented which could apply to the case before us. If some one were to come forward and assert his presence when he had not been seen or noticed by others, there might be room for questioning his position. But where there is no doubt or dispute as to the fact of presence, no such question can arise, and the only objection then will be that he may not be favorable to the prosecution. But this is no answer, any more than it would be if a subscribing witness stood in a similar position. As explained in *Hurd v. People, 25 Mich., 406,* and in the English cases there referred to, a public prosecutor is not a plaintiff's attorney, but a sworn minister of justice, as much bound to protect the innocent as to pursue the guilty, and he has no right to suppress testimony. The fact that he is compelled to call these witnesses, when he may not always find them disposed to frankness, entitles him, when it appears necessary, to press them with searching questions.—*Reg. v. Ball, 8 C. & P., 745; Reg. v. Chapman, 8 C. & P., 558.* By this means, and by laying all the facts before the jury, they are quite as likely to get at the truth as if he were allowed to impeach the witnesses who disappoint him. Any intelligent jury will readily discover whether a witness whom the prosecutor has been compelled to call is fair or adverse, and can make all proper allowance for bias, or any other influence which may affect his credit. If there is but a single

eyé witness, he could not be impeached, and yet the danger of falsehood is quite as great, and the chances of its correction much less than where there are two, and both are called. And if such a witness need not be called by the prosecution, the defense cannot impeach him, and must either call him, and run the risk of finding him against them, or, if they fail to call him, be prejudiced by the argument that they have omitted to prove what was in their power, and must have done so because they dared not call out the facts. There is no fairness in such a practice, and a prosecutor should not be permitted to resort to it. He is not responsible for the shortcomings of his witnesses, and he is responsible for any obstacle thrown in the way of eliciting all the facts.

The judgment must be reversed, and a new trial granted. The respondent to be remanded to the custody of the sheriff of Saginaw county.

COOLEY and CHRISTIANCY, JJ., concurred.

GRAVES, CH. J., did not sit in this case.