[No. 10,934.  In Bank.—April 30, 1884.]

## THE PEOPLE, RESPONDENT, v. JOHN MUNN, APPELLANT.

<table>
<tr><td>65</td><td>211</td></tr>
<tr><td>79</td><td>419</td></tr>
<tr><td>65</td><td>211</td></tr>
<tr><td>118</td><td>460</td></tr>
</table>

CRIMINAL LAW—MURDER—INTENT—INSTRUCTIONS.—The defendant was convicted of the crime of murder of the second degree. The evidence showed that he struck the deceased two or three blows with his fist, from which death ensued. It was not shown that he intended to kill deceased, but the court instructed the jury that he was liable for all *possible* consequences of his act. *Held*, error.

APPEAL from a judgment of the Superior Court of Stanislaus County, and from an order refusing a new trial.

The facts are stated in the opinion of CHIEF JUSTICE MORRISON.

*Wright & Hazen*, and *D. S. Terry*, for Appellant.

*Attorney-General Marshall*, for Respondent.

MORRISON, C. J.—The defendant was convicted of the crime of murder of the second degree, and was sentenced to imprisonment for life in the State prison. The killing occurred in the town of Turlock, in the county of Stanislaus, on the 12th day of August, 1883, under circumstances substantially as follows: The defendant, Albert Case the deceased, and several others, were in a saloon kept by one Ross, at the hour of nine or ten o'clock at night, when an exchange of words occurred between the defendant and the deceased. What the exact words were does not clearly appear from the evidence. Suffice it to say they were words of insult from the defendant, and of remonstrance on the part of the deceased. There was, how-

ever, no angry discussion, and persons present thought the defendant was jesting rather than in earnest. Case was sitting near the door, and defendant standing at the bar of the saloon. The latter walked over to where the former was sitting, and after the exchange of some words struck the former either two or three blows with his fist. The blows fell on the face or head of the deceased, and did not at the time or immediately afterward seem to produce any serious effect. How severe the blows were does not clearly appear, but they must have been dealt with a good deal of force. The deceased was a lad of sixteen or seventeen, well developed and largely grown for his age, and was nearly or quite as large as the defendant. The morning after the infliction of the injury the deceased, Case, was found lying on the ground, dead, near the room in which he slept.

The *post mortem* examination showed that there was a fracture of the skull just above the right ear, and a large clot of blood on the inside of the skull. This came from the rupture of an artery, and was pronounced by the physician making the autopsy to be the cause of death.

The principal question in the case which we deem it necessary to consider is, did the facts, admitting them in their full force and effect, constitute murder?

This degree of homicide is defined by section 187 of the Penal Code to be the unlawful killing of a human being with malice aforethought, whereas manslaughter is the unlawful killing of a human being without malice. (§ 192, Pen. Code.)

"It is of two kinds: First, voluntary, upon a sudden quarrel or heat of passion. Second, involuntary, in the commission of an *unlawful act not amounting to felony;* or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution or circumspection."

It may be conceded that an assault with the fist, or without the use of a deadly weapon, may be made in such a manner and under such circumstances as to make the killing murder, but the law draws a broad distinction in cases generally between an assault committed with a deadly weapon, and a simple assault and battery. The former amounts to a felony, whereas the other is merely a misdemeanor. Section 240 of the Penal Code

provides that "an assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. A battery is any willful and unlawful use of force or violence on the person of another." (§ 242, Pen. Code.) A battery is punishable by fine, or imprisonment in the county jail, or both. (§ 243, Pen. Code.)

An assault with a deadly weapon, or by any means or force likely to produce great bodily injury, is declared to be a felony, and is punishable by imprisonment in the State prison. (§ 245, Pen. Code.)

In the case of the *People* v. *Murat*, 45 Cal. 281, it was held that an assault made without the use of a deadly weapon, with intent to do mere bodily harm, and not to do murder, is a misdemeanor, nothing more.

In the trial of cases of homicide committed by violence it is almost always important to consider the character of the weapon with which the homicide was committed, and all through the cases great emphasis is laid on the fact that a weapon likely to produce death was used by the accused. If the means employed be not dangerous to life, or, in other words, if the blows causing death are inflicted with the fist, and there are no aggravating circumstances, the law will not raise the implication of malice aforethought, which must exist to make the crime murder. The distinguishing characteristic respecting the two crimes of murder and manslaughter is malice. Without the presence of this element of malice the crime does not reach the higher degree of murder, but amounts simply to manslaughter.

We will consider a few of the cases in which the distinction is clearly drawn.

If a party participate in a homicide, intending only to commit an assault and battery, he is guilty of manslaughter only. (*Brown* v. *The State*, 28 Ga. 200.)

Beating and striking a wife violently with the open hand, the blows being illegal, the killing of the wife in such manner is manslaughter. (*Commonw.* v. *McAffee*, 108 Mass. 461.)

If A and B agree to assault C with their fists, and C receives chance blows from either, producing death, both are guilty of manslaughter. (*Reg.* v. *Caton*, 12 Cox C. C. 624.)

When death ensues in pursuit of an unlawful design, without any intention to kill, it will be murder or manslaughter as the intended offense is felony or only a misdemeanor. (*Smith* v. *State*, 33 Me. 55.)

The case of *Wellar* v. *The State*, 30 Mich. 16, is a very instructive one on the point we are now considering, and it was there held that "in general when the assault is not committed with a deadly weapon the intent must be clearly felonious to make the killing constitute murder . . . . and in such a case the deadly intent ought to be left in no doubt."

The willful use of a deadly weapon, without excuse or provocation, in such a manner as to imperil life, is almost universally recognized as showing a felonious intent. (2 Bish. Crim. Law, §§ 680, 681.) But when the weapon or implement used is not likely to kill or maim, the killing is held to be manslaughter, unless there is an actual intent which shows a felonious purpose. (See cases cited in 30 Mich. 16.)

It does not appear from the evidence in this case that there was any intention on the part of the defendant to kill the deceased, and the physician who made the *post mortem* examination states that an ordinary blow would not have produced the fracture which resulted in the death of Case. It appears, too, that the blow happened by chance to fall upon that portion of the skull which is the thinnest and most easily fractured. There certainly was no design or intent on the part of the defendant that it should. If the blow had fallen a little higher or a little lower on the skull, the result, in all human probability, would not have been fatal. If death had not ensued the defendant would have been guilty of a simple assault and battery under the Penal Code, as the assault was not with a dangerous weapon or instrument, or by any means or force likely to produce great bodily injury.

If the party had not died from the injury the defendant would have been guilty of a misdemeanor only, and not a felony.

The killing of Alfred Case not having been intended, but resulting from an unlawful act, not amounting to a felony, was therefore manslaughter and not murder.

We will now consider one of the instructions given by the court to the jury. It was as follows:—

"Intent is generally inferred from the commission of the act. If a man knowingly and willfully does an act unlawful in itself, and it produces harm, the law conclusively infers that such harm was intended. The law presumes that the natural, necessary, and even possible consequences were intended by the author of the act. If of sound mind, the natural and proximate consequences. And if the act intended was unlawful, even the *possible* consequences. So if the act produces harm not intended, it holds him responsible for all the consequences."

This instruction ignores all distinction between the intent to commit an act amounting only to a misdemeanor, and one that would, if committed, be a felony. We have endeavored to point out the distinction. In our opinion the instruction was too broad, and was well calculated to mislead the jury under the circumstances of this case. The language of Chief Justice Shaw in the case of *Commonw.* v. *Webster*, 5 Cush. 305, is as follows: "This rule is founded on the plain and obvious principle that a person must be presumed to intend to do that which he voluntarily and willfully does in fact do, and that he must intend all the *natural, probable, and usual* consequences of his own act."

To hold the defendant liable for all *possible* consequences of his act, and to the full extent of the rule laid down by the court, would be dangerous in the extreme.

For the reasons herein set forth the judgment and order are reversed, and the cause remanded for a new trial.

SHARPSTEIN, J., and THORNTON, J., concurred in the opinion of CHIEF JUSTICE MORRISON.

ROSS, J., concurred upon the ground last stated in the opinion.

McKINSTRY, J., and MYRICK, J., concurred in the judgment and in the opinion that the instruction as to responsibility for all *possible* consequences was erroneous.