Mr. Justice Montgomery
delivered the opinion of the court:
The defendant stands convicted of the murder of his wife, Hattie.
We have reached the conclusion that the conviction must be set aside and a new trial ordered, and therefore it is not important to notice any of the points made at the argument, excepting that upon which the reversal is based, and those which are likely to arise at a subsequent trial.
The undisputed facts were that in the early part of the evening next preceding the death of the wife, she and her husband were walking by themselves on a somewhat unfrequented street; that some controversy or dispute was going on between them, which ended in her being shot with a revolver.
No one witnessed the shooting and no direct evidence as to who fired the shot could be given. The prosecution claimed that it was done by the defendant, while the defense contended that she herself did it.
The occurrence which impels us to vacate the verdict happened substantially as follows:
Before the case of the prosecution was rested, the mother of the defendant’s wife was recalled as a witness and interrogated, as to a conversation with the daughter, on the morning after the shooting. She testified that she did have a talk with her at that time.
The prosecutor then, without attempting to show a mental condition which entitled her statement to be received as a *567 dying declaration, asked the witness to state what the daughter-said as to who shot her. Upon objection, the question was not pressed, but instead, the prosecutor then, after stating substantially that he knew he was not then entitled to the proof, but did not know as the counsel for the defense were aware of it, proceeded to examine the witness as to the mental condition of the patient, as to her apprehension of impending death.
The witness testified in substance that at 6 o’clock in the morning, at her (witness’) house, several blocks away from the place, and ten or eleven hours after the time of the shooting, she (witness) was trying to get the daughter to take medicine; that the patient objected, whereupon the mother said to her, “Hattie, take your medicine; you don’t want to die and leave your mother and sister and brother,” to which the daughter replied: “ You have got plenty left; there is Ruth and Amy.”
Upon this slender predicate, she was again asked to state who shot her. Again objection was made and sustained.
At the close of the defendant’s testimony, this witness was again recalled and asked to state the conversation with the daughter as to who shot her, and again defendant’s counsel objected, and again the objection was sustained.
Neither of these offers should have been made and for the first and the last of them there was no excuse whatever.
The statement made by the daughter to the mother could not be received as evidence unless offered as part of the case of the prosecution, and unless it was part of the res gesta:, or made under circumstances entitling it to be received as a- dying declaration.
Clearly it was not part of the res gestos. It is equally clear that it was not entitled to be proven as a dying declaration,
If it be admitted that the second offer was justifiable, the others should not- have been made, and each offer was in substance a statement by the "prosecution, that the witness would, if allowed, testify that her daughter told her that the defendant shot her.
*568 It is impossible that these offers should not have prejudiced the case with the jury coming as they did from the public prosecutor, whose duty it was to act only in furtherance of justice and to stand entirely impartial between the prosecutor and the prisoner. Hurd vs. People, 25 Mich., 416; Wellar vs. People, 30 Mich., 23.
The jury well understood that when the fatal shot was fired there were but two persons in the world who knew who did it; one was the defendant and the other the injured woman.
It is not only probable, butalmost certain, that the prisoner was prejudiced by these offers. If so, and if, as seems manifest, the first offer was not only unwarranted, but known to be so by the prosecutor, and if, as seems manifest, the renewal of the offer in rebuttal was wholly without warrant, and inasmuch as the effect of such offers was not then and there counteracted or obliterated as far as possible, the conviction, if unreversed, must result in the taking of the life of a human being. We are of the opinion that the verdict should not be allowed to stand.
Martin vs. State, 68 Miss., 507 ; State vs. Hascall, 6 N. H., 352; Curtis vs. State, 6 Caldwell (Tenn.), 11; Cooley Const. Lim., 311.
For the reason stated at the outset, -we feel called upon to consider but one other point, and that is as to the admission of the testimony of the witness Maier, who testified against objection, that on the evening in question he met near the corner of Seventh and D streets a colored man and woman, and heard the man threaten to shoot the woman if she followed him.
We have nothing to do with, and no opinion to express about, the credibility of this testimony, and we can only determine whether testimony had been given which fairly tended to show that the colored man was the defendant, and the woman his wife.
Witness swore that he went from his home in Anacostia, *569 about 2 miles, to his mother’s on Seventh Street between D and E, S. W., by a route which took him south along Maryland avenue to Seventh street and thence up Seventh to D, and thence along D street to Ninth; that he left Anacostia •a little after 6 o’clock and walked a mile to the street cars at the Navy Yard; that he then boarded a car and rode to Maryland avenue at the foot of the Capitol, and then walked up that avenue and to his mother’s by the route above stated. He then declares that it “ must have been somewhere after 7,” when he met the man and woman. And then that he “ struck his mother’s house * * * between ten and fifteen minutes of 8.” '
So, if the witness was reliable, and if defendant and his wife left her mother’s as defendant swore, “ after seven,” or as the mother testified, “ about half-past seven,” then it is not only possible, but it was quite probable, that witness did meet them as was claimed.
Besides, the threat to which he testified was substantially like the one which other witnesses testified that defendant was making, and on the whole, we think there was evidence which fairly tended to show that defendant was the man referred to by the witness.

We think there was no error in receiving this testimony, but for the other reasons the conviction must be set aside and a new trial granted.