KENNARD, J., Dissenting.
Someone who unlawfully kills a person without deliberately intending to do so is guilty of second degree murder if the act resulting in death is done with implied malice, which means the deliberate performance of an act whose natural consequences are dangerous to life, with knowledge that the act endangers the life of another.
Here, without warning, a right-handed defendant used his left hand to punch a man once in the head, causing the man to hit his head on the *515 pavement, fatally injuring him. That incident led to a murder charge. Although the prosecution’s theory at trial was second degree murder, it presented no evidence to satisfy either the requirement that the natural consequences of the punch included death, or the requirement that defendant knew the act was dangerous to life. A jury nonetheless convicted defendant of second degree murder. A unanimous Court of Appeal panel concluded there was insufficient evidence of implied malice to support the second degree murder conviction. Unlike today’s majority, I would uphold that conclusion.
I
On the night of May 23, 2007, while at a bar, Emery Kauanui had an argument with defendant Seth Cravens. To prevent a fight, a bar manager asked Kauanui to leave. Kauanui then left for his nearby home.
About an hour later, defendant said, “Let’s go fuck him up,” and he and four friends drove to Kauanui’s house. On the street outside the house, one or more of defendant’s friends began to fight Kauanui. When Kauanui’s girlfriend arrived, she saw Kauanui lying on his back and defendant’s friend, Eric House, straddling and punching him. Kauanui managed to get free. As he stood up, he looked unsteady. (He had a blood-alcohol level of 0.17 percent and traces of marijuana in his blood.)
Kauanui walked over to defendant and asked, “How the fuck are you going to jump me at my house?” Defendant, who was standing on the curb, and who is right-handed, stepped forward and used his left hand to hit Kauanui in the head with a sudden blow. (Defendant was six feet tall and weighed 240 pounds; Kauanui was five feet 10 inches tall and 180 pounds.) Kauanui, who was standing below defendant in the street, fell backwards. The fall fractured his skull and triggered swelling in his brain that, four days later, led to his death.
A jury convicted defendant of second degree murder, as well as six prior assaultive crimes involving different persons. On defendant’s appeal, a unanimous panel concluded there was insufficient evidence of implied malice to support the second degree murder conviction, which the court reduced to voluntary manslaughter. This court granted the Attorney General’s petition for review.
II
Murder is an unlawful killing with malice aforethought. (Pen. Code, § 187, subd. (a).) Malice can be express or implied. (Id., § 188.) If malice is implied, the murder is of the second degree. (Id., § 189.)
*516 Implied malice has both an objective and a subjective test. The objective test requires “ ‘ “an act, the natural consequences of which are dangerous to life.” ’ ” (People v. Knoller (2007) 41 Cal.4th 139, 143 [59 Cal.Rptr.3d 157, 158 P.3d 731] (Knoller), quoting People v. Phillips (1966) 64 Cal.2d 574, 587 [51 Cal.Rptr. 225, 414 P.2d 353].) This means an act involving “ ‘a high degree of probability that it will result in death.’ ” (Knoller, supra, at p. 152.) The subjective test requires that the act be performed “ ' “by a person who knows that his conduct endangers the life of another.” ’ ” (Id. at p. 143.) Below, I discuss why this case does not meet either the objective or the subjective test for implied malice.
A. Objective Test
As the majority correctly notes, “ ‘if the blows causing death are inflicted with the fist, and there are no aggravating circumstances, the law will not raise the implication of malice ....’” (Maj. opn., ante, at p. 508, quoting People v. Munn (1884) 65 Cal. 211, 213 [3 P. 650].) Here, according to the majority, aggravating circumstances surrounded defendant’s single blow with the fist to Kauanui’s head (maj. opn., ante, at p. 511), a topic I discuss below.
The majority points out that defendant delivered the punch while he was standing on the curb and Kauanui was standing in the street. (Maj. opn., ante, at p. 509.) Defendant did so, the majority states, “to ensure that he could inflict the greatest possible injury” by gaining “extra inches of height for his punch.” {Ibid.) But even if defendant so intended, that intent is, in determining implied malice for murder, irrelevant to the objective question whether defendant’s single blow involved “ ‘a high degree of probability’ ” of death. (Knoller, supra, 41 Cal.4th at p. 152.) At trial the prosecution presented no evidence that defendant’s position on the curb increased the probability that his punch would kill Kauanui.
The majority also views as an aggravating circumstance defendant’s prior conduct of hitting four other people with sudden, unexpected blows. (Maj. opn., ante, at pp. 509-511.) But these past assaults, none of which led to a fatal injury, do not tend to establish that in this case the blow involved a high probability of death.
The majority further observes that defendant’s past use of sudden, unexpected punches “corroborated” that he “used a sucker punch here,” which, the majority asserts, shows that defendant “intended to catch Kauanui at his most vulnerable.” (Maj. opn., ante, at p. 509.) That undisputed fact has no bearing, however, on whether defendant’s single blow involved a high probability of killing Kauanui. As noted earlier, the objective test for implied malice requires “ ‘ “an act, the natural consequences of which are dangerous to *517 life.” ’ ” (Knoller, supra, 41 Cal.4th at p. 152.) Here, the prosecution presented no evidence at trial that Kauanui’s death by falling and hitting his head on the pavement was a natural consequence of the single unexpected blow, meaning that the blow had a high probability of resulting in death, a requirement of the objective test for implied malice.
B. Subjective Test
As noted earlier, implied malice for second degree murder contains not only an objective test but also a subjective test. The subjective test asks whether the defendant “ ‘ “kn[ew] that his conduct endangered] the life of anothér.” ’ ” (Knoller, supra, 41 Cal.4th at p. 143.) According to the majority, a reasonable jury could infer this subjective knowledge from evidence presented in this case, namely, the circumstances on which the majority, in its discussion of the objective test for implied malice, relies in concluding that death was a natural consequence of defendant’s single blow. (Maj. opn., ante, at p. 511.) As I have discussed, I do not agree with the majority that those circumstances made death a natural consequence of the blow. (See pt. II.A., ante.) Consequently, I do not agree with the majority’s conclusion that those same circumstances establish defendant’s subjective knowledge that his conduct endangered Kauanui’s life.
The majority also relies on three additional circumstances in support of its conclusion that defendant knew that his single blow endangered Kauanui’s life, thus satisfying the subjective test for implied malice. (Maj. opn., ante, at p. 511.) None, however, sheds any light on defendant’s knowledge at the time of the blow. The majority points out that defendant had earlier urged his friend, House, to fight Kauanui. That fact, however, is irrelevant to whether defendant knew, when he later hit Kauanui, that his single blow endangered Kauanui’s life. The other two circumstances cited by the majority pertain to defendant’s not seeking medical help for Kauanui immediately after the blow, and defendant’s trivializing the incident the next day. (Ibid.) But defendant’s behavior after the blow does not tend to establish his knowledge at the time of the blow that his act endangered Kauanui’s life.
My conclusion that such knowledge was not shown is supported by the following two circumstances: First, defendant, who is right-handed, hit Kauanui with his left fist, and therefore had less reason to suspect that the blow would endanger Kauanui’s life. Second, as the Court of Appeal noted, defendant’s past conduct in four instances of hitting other people with unexpected blows “without inflicting any life-threatening injury tends to negate an inference of subjective knowledge” that his sudden, unexpected blow to Kauanui would endanger Kauanui’s life.
*518 For the reasons expressed above, I agree with the Court of Appeal that, because of insufficient evidence of implied malice, defendant’s conviction of second degree murder cannot stand.
Appellant’s petition for a rehearing was denied March 14, 2012, and the opinion was modified to read as printed above. Kennard, J., was of the opinion that the petition should be granted.