Filed 9/20/24  P. v. McDaniel CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HAROLD PHILLIPS McDANIEL,<br><br>    Defendant and Appellant. | B332290<br><br>(Los Angeles County<br>Super. Ct. No. NA006099) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County.  Daniel J. Lowenthal, Judge.  Affirmed.

Unite the People, Inc., and Crystal A. Morgan for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Blythe J. Leszkay and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2021, Harold Phillips McDaniel appealed the order of the superior court denying his petition for resentencing under Penal Code[1] section 1172.6 (former § 1170.95, Stats. 2022, ch. 58, § 10) at the prima facie stage. We reversed and remanded to the superior court for further proceedings pursuant to section 1172.6. (*People v. Harold Phillips McDaniel* (Nov. 22, 2021, B306957) [nonpub. opn.].) McDaniel now appeals the denial of his petition following an evidentiary hearing. He contends substantial evidence does not support the superior court's finding that he acted with implied malice. He further asserts the superior court violated section 1382 and thus prejudicially erred by failing to issue the order to show cause and conduct the evidentiary hearing in a timely manner following issuance of the remittitur. We reject both claims and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*A. The killing of Fernando Chavez[2]*

Around 2:00 in the morning on January 1, 1991, appellant and three other men (codefendants Lorenzo James Robinson,

---

[1] Undesignated statutory references are to the Penal Code.

[2] The underlying facts are drawn from the trial record in appellant's direct appeal from his conviction (*People v. Lorenzo James Robinson et al.* (Aug. 11, 1993, B062769) [nonpub. opn.]), as well as the transcript of appellant's August 14, 2014 parole hearing, which the superior court considered at the section 1172.6 evidentiary hearing and which we have judicially noticed. (See § 1172.6, subd. (d)(3) [at the hearing to determine petitioner's eligibility for relief, "the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed"]; *People v.*

Kenneth Grant, and Kevin Alvin Johnson) beat Fernando Chavez to death.

The fight started as an altercation between Robinson and Chavez in a parking lot. After Robinson threw the first punch, appellant, Grant and Johnson ran over and began punching, kicking and stomping on Chavez. The four men continued their attack even as Chavez fell to the ground and begged them to stop. Eventually, the fight "just stopped," and the attackers left Chavez for dead, wedged between two parked cars on the street.

Police discovered Chavez around 6:45 in the morning on January 1. He was still breathing, but had been so severely beaten that the officers could not determine his race. Paramedics took Chavez to the hospital, where he died from multiple head injuries. Chavez also suffered three broken ribs and a fractured vertebra in his cervical spine, which was caused by "a very hard blow, severe force." In addition, Chavez had multiple abrasions and bruises on his face, neck, shoulders, back, chest, abdomen, and arms. The medical examiner noted impressions and bruises on Chavez's chest and abdomen that appeared to have been made by a shoe.

## B. Appellant's conviction

The jury convicted appellant and his three codefendants of second degree murder after being instructed on aiding and

---

*Mitchell* (2022) 81 Cal.App.5th 575, 586 ["There is no categorical exclusion of a defendant's sworn parole hearing testimony" in a section 1172.6 evidentiary hearing]; *People v. Myles* (2021) 69 Cal.App.5th 688, 697–706 [upholding superior court's consideration of parole hearing transcript at section 1172.6 evidentiary hearing].)

abetting, express and implied malice murder, and murder under the natural and probable consequences doctrine.

### C. *The petition for resentencing under section 1172.6*

Appellant filed a petition for resentencing under section 1172.6 on March 11, 2019. In it, appellant asserted that the jury instructions and prosecution argument at trial permitted the jury to convict appellant of murder on a natural and probable consequences theory of liability. The petition included copies of several instructions given to the jury, including the natural and probable consequences instruction (CALJIC No. 3.02), and excerpts from the People's closing argument in which the prosecutor relied on that theory of liability.

Based on the facts recited in this court's opinion in the direct appeal from the conviction, the superior court concluded that appellant could have been convicted of second degree murder on either an express or implied malice theory, and the prosecution had met its burden of proving appellant ineligible for relief beyond a reasonable doubt. The court denied the petition without issuing an order to show cause or conducting an evidentiary hearing.

On appeal from the prima facie denial, the parties "agree[d] that the superior court erred in denying the petition at the prima facie review stage based on its own evaluation of the evidence." We reversed and remanded the matter to the superior court to issue an order to show cause and conduct further proceedings in accordance with former section 1170.95, subdivision (d).

The remittitur issued on January 24, 2022, and the superior court issued an order to show cause on July 18, 2022.

On January 31, 2023, the superior court conducted the evidentiary hearing on the petition. Based on the evidence

4

presented at trial and appellant's admissions at his August 14, 2014 parole hearing, the prosecutor argued the evidence showed "beyond a reasonable doubt that [appellant] was not only an aider and abettor, but a direct perpetrator in the murder of the victim in this case."  Even if the evidence did not establish express malice, the prosecutor asserted, "There's certainly evidence here of implied malice."  Appellant called no witnesses and offered no additional evidence, but argued that "neither the physical nor the mental component of implied malice exists" to establish liability under a second degree implied malice theory.

On February 2, 2023, the superior court issued a minute order denying the petition.  Citing the trial transcripts and appellant's statements at the parole hearing, the court made the following factual findings:

"[Appellant] participated in a group assault against Fernando Chavez on January 1, 1991.

"[Appellant] pummeled Mr. Chavez, multiple times, with his fists and feet.

"[Appellant] participated in the assault until it ended.

"Mr. Chavez, as a result of the attack, suffered fractured ribs, broken vertebrae, red and purple abrasions, hemorrhaging, and indentations to his torso.

"Mr. Chavez died as a result of the assault.

"After the attack, [appellant] provided no emergency assistance to Mr. Chavez as he lay on the street, motionless, in a pool of his own blood.

"Mr. Chavez was beaten so significantly that . . . the police officer who discovered Mr. Chavez's body, couldn't even determine his race."

Based on these factual findings and the applicable law, the superior court concluded beyond a reasonable doubt that appellant had acted with implied malice when he participated in the beating that resulted in Chavez's death.

## DISCUSSION

## I. The Superior Court Properly Denied the Section 1172.6 Petition on the Basis of Its Finding that Appellant Is Guilty of Second Degree Implied Malice Murder

### A. *Section 1172.6*

Enacted in 2018, Senate Bill No. 1437 (2017–2018 Reg. Sess.) effectively abolished the natural and probable consequences doctrine in cases of murder and limited the application of the felony-murder doctrine. (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The legislation also served to eliminate murder convictions premised on any theory of imputed malice—that is, any theory by which a person can be convicted of murder for a killing committed by someone else, such as felony murder or the natural and probable consequences doctrine—unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to human life. (§§ 188, subd. (a)(3) & 189, subd. (e).) Specifically, the Legislature amended section 188 to require that when the felony-murder rule does not apply, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).)

6

Section 1172.6 established a procedure for vacating the murder convictions of defendants who could no longer be convicted of murder because of Senate Bill No. 1437's amendments to sections 188 and 189. (*Lewis, supra,* 11 Cal.5th at pp. 957, 959, 971; *Gentile, supra,* 10 Cal.5th at p. 843.) After appointing counsel upon the filing of a properly pleaded petition for resentencing, the superior court must conduct a prima facie analysis with briefing to determine the petitioner's eligibility for relief, and, if the requisite prima facie showing is made, issue an order to show cause. (§ 1172.6, subd. (c); *People v. Wilson* (2023) 14 Cal.5th 839, 869.)

At the evidentiary hearing following issuance of an order to show cause, the superior court acts as an independent fact finder. (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1065 (*Hill*); *People v. Garrison* (2021) 73 Cal.App.5th 735, 745.) The prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is guilty of murder or attempted murder under a theory of murder that remains valid after Senate Bill No. 1437's amendments to the law of murder. (§ 1172.6, subd. (d)(3); *People v. Strong* (2022) 13 Cal.5th 698, 709; *Garrison, supra,* at p. 745.) The petitioner and the prosecutor may offer new or additional evidence, and the court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (§ 1172.6, subd. (d)(3); see *Gentile, supra,* 10 Cal.5th at pp. 853–854.)

Following an evidentiary hearing, we review the superior court's denial of the section 1172.6 petition for substantial evidence. (*People v. Reyes* (2023) 14 Cal.5th 981, 988 (*Reyes*).) Under this familiar standard, we examine the record " ' " 'in the light most favorable to the judgment below to determine whether

7

it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*Ibid.*)  We resolve whether " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.]  In so doing, [we] 'presume[ ] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Edwards* (2013) 57 Cal.4th 658, 715; *People v. Vargas* (2022) 84 Cal.App.5th 943, 951.)  Finally, we uphold the superior court's ruling " 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [it]." ' " (*People v. Cravens* (2012) 53 Cal.4th 500, 508 (*Cravens*).)

### B. The superior court's finding that appellant acted with implied malice is supported by substantial evidence

Second degree implied malice murder remains a valid theory of murder liability notwithstanding the changes to the law of murder made by Senate Bill No. 1437.  (*People v. Schell* (2022) 84 Cal.App.5th 437, 442 (*Schell*).)  Appellant, however, argues that substantial evidence does not support the superior court's determination that appellant acted with implied malice in participating in the assault on Chavez that resulted in his death, and the court therefore erred in denying appellant's petition for resentencing.  We disagree.

Murder is the unlawful killing of a human being with malice aforethought.  (§ 187, subd. (a).)  Malice may be express or implied.  (§ 188, subd. (a).)  "The primary difference between express malice and implied malice is that the former requires an intent to kill but the latter does not."  (*People v. Soto* (2018) 4

8

Cal.5th 968, 976 (*Soto*).)  Implied malice murder instead requires the killing be proximately caused by an act, " ' " 'the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.' " ' " (*Reyes, supra,* 14 Cal.5th at p. 988.)  " ' "To be considered the proximate cause of the victim's death, the defendant's act must have been a substantial factor contributing to the result, rather than insignificant or merely theoretical." ' " (*Ibid.*; *id.* at p. 989 ["To suffice for implied malice murder, the defendant's act must not merely be dangerous to life in some vague or speculative sense; it must ' "involve[] a high degree of probability that it will result in death" ' "]; *Cravens, supra,* 53 Cal.4th at p. 513 (conc. opn. of Liu, J.) ["Although an act that will certainly lead to death is not required, the probability of death from the act must be more than remote or merely possible"]; *People v. Knoller* (2007) 41 Cal.4th 139, 152 [" ' "dangerous to life" ' " means a " 'high degree of probability that' " the defendant's act " 'will result in death' "].)

Implied malice thus has " ' "both a physical and a mental component.  The physical component is satisfied by the performance of 'an act, the natural consequences of which are dangerous to life.' " ' " (*Soto, supra,* 4 Cal.5th at p. 974.)  An assault with fists will satisfy the physical component of implied malice murder when the blows causing death are inflicted under aggravating circumstances, that is, " 'in such a manner and under such circumstances as to make the killing murder.' " (*Cravens, supra,* 53 Cal.4th at p. 508, quoting *People v. Munn* (1884) 65 Cal. 211, 212.)

The mental component of implied malice murder is the requirement that the defendant " 'knows that his conduct endangers the life of another and . . . acts with conscious disregard for life.' " (*Soto, supra,* 4 Cal.5th at p. 974.)  The mental component is satisfied by the defendant's "subjective awareness that his conduct endangered [the victim's] life [based on] the circumstances of the attack alone, the natural consequences of which were dangerous to human life." (*Cravens, supra*, 53 Cal.4th at p. 511.)  The defendant's conduct before and after the attack may be considered in determining whether the subjective awareness requirement has been met.  (*Ibid.*)

Reviewing the entire record in the light most favorable to the superior court's ruling, we conclude substantial evidence supports the conclusion that appellant is guilty of second degree murder under a theory of implied malice that remains valid following Senate Bill No. 1437's amendments to the law of murder.  The superior court expressly found the physical component of implied malice satisfied by the aggravated circumstances of a beating that left the victim unable to move and his race unrecognizable.  These circumstances also permitted the court to "infer[ ] [appellant's] subjective awareness that his conduct, punching and kicking Mr. Chavez to the point where his race was undiscernible, and he could no longer move, endangered Mr. Chavez's life."  The court added that appellant's "behavior after the assault bolsters this finding:  He took no steps to secure emergency assistance for Mr. Chavez."

The superior court's findings are well supported by substantial evidence in the record that showed appellant and three other men punched, kicked, and stomped on Chavez with such force as to cause four separate deadly hemorrhages in the

10

brain, break several ribs and a vertebra in his neck, and leave shoe impressions on his chest and abdomen. Not only was Chavez "beaten so badly around the face" that the officers who found him could not even determine his race, but "[h]e was barely breathing," and the officers thought "he wasn't going to make it through the end of the day." The officers "didn't even know what to touch or what type of first aid to start on him, he was so messed up." Chavez died at the hospital as a result of the severe head injuries he sustained in the beating.

At his parole hearing, appellant confirmed his participation in the severe beating, admitting he punched and kicked Chavez. Appellant stated he did not leave the scene until the attack stopped, and then simply walked away without securing any assistance for Chavez as the man lay bleeding in the street, wedged between two parked cars. Police did not discover Chavez until over four hours after the assault.

Substantial evidence showed appellant's active participation in a prolonged attack on a defenseless victim. One witness told police that Chavez tried to get away, but appellant and his cohorts kept hitting and kicking him. Chavez fell to the ground several times, and each time he tried to get up, "they would just keep beating on him." Another witness, 11-year-old Brenda, was awakened by the noise of an altercation outside. Brenda went to her balcony and saw several men beating someone below. She retreated inside to find her father, and when she returned, the fight was still going on. She went back to bed before the beating ended. Both of these witnesses heard Chavez begging the men to stop and leave him alone.

***C. Appellant's claims that the superior court erred in finding him guilty under a theory of implied malice murder lack merit***

Appellant's argument that he could not be convicted of second degree implied malice murder under current law borders on incoherent.  Appellant contends that he could not be convicted of Chavez's murder as an aider and abettor because all four defendants were found to be equally liable, "so there was no principal to aid and abet."  Appellant also asserts "[t]here is simply no proof of Appellant's malice, outside of his actions when participating in the crime in question."

Convicting all the participants in a murder does not depend on the mechanical labeling of one actor as the "principal" and identifying the others as "aiders and abettors."  Rather, "when a person, with the mental state necessary for an aider and abettor, helps or induces another to kill, that person's guilt is determined by the combined acts of all the participants as well as that person's own mens rea." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1122; *Reyes, supra,* 14 Cal.5th at pp. 990–991 [" '[D]irect aiding and abetting is based on the combined actus reus of the participants and the aider and abettor's own mens rea' "]; *People v. Powell* (2021) 63 Cal.App.5th 689, 712–713.)  As our Supreme Court has explained, "the dividing line between the actual perpetrator and the aider and abettor is often blurred.  It is often an oversimplification to describe one person as the actual perpetrator and the other as the aider and abettor.  When two or more persons commit a crime together, both may act in part as the actual perpetrator *and* in part as the aider and abettor of the other, who also acts in part as an actual perpetrator." (*McCoy,* at p. 1120.)

Thus, even when it is unknown which of the participants in a killing inflicted a fatal blow, all of the participants who acted with a conscious disregard for the victim's life and whose combined acts caused the death may be convicted as aiders and abettors to a second degree implied malice murder. (See *Schell*, *supra*, 84 Cal.App.5th at p. 443 [for defendant to be liable for murder under an implied malice theory, "[i]t suffices that he knew he was aiding in a violent attack, knew dangerous weapons were being used against [the victim], and intended to stop [the victim] from escaping or defending himself by helping the perpetrators to surround and hit him]; see also *People v. Guillen* (2014) 227 Cal.App.4th 934, 984–985 [where 30 to 50 inmates beat another inmate to death, sufficient evidence established both the physical and mental components of implied malice murder for inmates who authorized or participated in a beating of another inmate, where the deadly attack took place over 30 minutes with as many as 50 inmates participating, and resulted in injuries consistent with a high-velocity car accident].)

In *Schell*, the defendant was one of at least eight participants in a vicious assault resulting in the victim's death. (*Schell*, *supra*, 84 Cal.App.5th at p. 440.) Although defendant attacked with only his fists and feet, others beat the victim with a baseball bat and a shovel, and someone stabbed the victim three times. (*Ibid.*) On appeal from the denial of defendant's section 1172.6 petition, the court determined that the defendant's "presence at the scene, his participation in the attack on the victim, his companionship with other perpetrators, his conduct before and after the crimes, and his motive of retaliation for disrespect all support the [superior court's] finding that he aided and abetted an implied malice murder." (*Id.* at p. 443.)

13

Here, notwithstanding the lack of evidence as to the specific blows delivered by any particular defendant, the superior court's finding that appellant is guilty of implied malice murder is supported by substantial evidence that established appellant's active participation in the deadly attack on Chavez. And because the mental state of malice may be inferred from the circumstances of the crime itself, substantial evidence also supports the superior court's finding that appellant harbored at least a conscious disregard for Chavez's life by taking part in a vicious beating he knew was dangerous to human life. (*Schell*, *supra*, 84 Cal.App.5th at p. 443.)

## II. Appellant's Claim of Prejudicial Error Under Section 1382 Lacks Merit

Appellant contends the superior court violated his right to a speedy trial under section 1382 by failing to issue the order to show cause and conduct an evidentiary hearing under section 1172.6 in a timely manner. We disagree. Not only has section 1382 no application to postjudgment proceedings under section 1172.6, but appellant cannot show prejudice from any delay in the superior court's issuance of the order to show cause.

Article I, section 15 of the California Constitution provides that "[t]he defendant in a criminal cause has the right to a speedy public trial . . ." By prescribing "certain time periods within which an accused must be 'brought to trial,' " section 1382 implements an accused's constitutional right to a speedy trial. (*Burgos v. Superior Court* (2012) 206 Cal.App.4th 817, 825; *Rhinehart v. Municipal Court* (1984) 35 Cal.3d 772, 776 ["To implement an accused's constitutional right to a speedy trial, the Legislature enacted section 1382"].)

14

Specifically, section 1382, subdivision (a)(2), provides in relevant part that in the absence of good cause for delay, the court must dismiss a felony action when the "defendant is not brought to *trial* . . . after the filing of the remittitur in the trial court, or after the issuance of a writ or order which, in effect, *grants a new trial*, within 60 days after notice of the writ or order is filed in the trial court and served upon the prosecuting attorney." (§ 1382, subd. (a)(2), italics added.)  By its plain language then, section 1382 applies only when a defendant is not "brought to trial" or when "the cause is to be tried again." (§ 1382, subd. (a)(2).)

Appellant cites no authority to support his claim that the time limits in section 1382 apply to proceedings under section 1172.6 or, for that matter, any comparable postjudgment proceeding.  Even a remand for resentencing does not implicate section 1382's time limits because such a proceeding does not involve a new trial or retrial of the case.  (*People v. Domenzain* (1984) 161 Cal.App.3d 619, 621 ["the language, history, and context of section 1382 preclude its application to sentencing or resentencing delay"].)  "[C]ourts have uniformly held the sentence modification procedure under section 1172.6 to constitute an act of legislative lenity, not a new criminal prosecution.  [Citations.] [¶]  Resentencing under section 1172.6 is a completely voluntary process initiated by the petitioner, which cannot result in additional punishment.  [Citation.]  It therefore does not implicate double jeopardy concerns, and there is no Sixth Amendment right to a jury.  [Citations.]  Indeed, '[a] petitioner under section 1172.6 does not possess many of the constitutional rights afforded to a criminal defendant at trial.' " (*Hill*, *supra*, 100 Cal.App.5th at pp. 1067–1068.)

15

Here, appellant's conviction has never been overturned. Rather, his case was remanded to the superior court for further proceedings in accordance with section 1172.6 in which no right to a new trial ever existed. Section 1382 plainly does not apply in these circumstances and no violation of the statute occurred.

Finally, appellant cannot show prejudice from any delays in issuing the order to show cause or conducting the section 1172.6 evidentiary proceeding. The superior court properly denied the resentencing petition after finding appellant guilty, beyond a reasonable doubt, of second degree implied malice murder. Neither prompt issuance of the order to show cause nor an earlier evidentiary hearing would have resulted in a different ruling.

## DISPOSITION

The order denying appellant's petition for resentencing under Penal Code section 1172.6 is affirmed.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

HOFFSTADT, J.

16